UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOB BLADIMIR GAMEZ-QUINTANILLA,

Petitioner,

-against-

Paul ARTETA, Sheriff, Orange County; Judith ALMODOVAR, New York Field Office Director for U.S. Immigration and Customs Enforcement; Todd BLANCHE, Attorney General of the United States; Markwayne MULLIN, Secretary of Homeland Security; and David VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement,

Respondents.

26-cv-6350 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

On June 30, 2026, the United States Department of Homeland Security issued a Form I-200 warrant for the arrest of petitioner Job Bladimir Gamez-Quintanilla. Dkt. 9-2 at 2. The next day, United States Immigration and Customs Enforcement ("ICE") authorities arrested him. *Id.* at 3. A notice to appear ("NTA"), however, wasn't issued until *after* Gamez-Quintanilla's arrest. Dkt. 10 ¶¶ 14–15.

Gamez-Quintanilla then filed this petition for habeas corpus relief. Dkt. 1. While the petition raised several issues, after the Government filed its opposition brief, Gamez-Quintanilla focused his challenge on just one contention concerning his arrest: that the sequence described above—warrant, arrest, NTA—violated the law and warrants his immediate release. Dkt. 15-1 at 3 ("Regardless of the questions Respondents' submission raise[s], one essential fact remains: at the time ICE arrested Petitioner, it had not issued an NTA."). For the following reasons, the Court agrees that the sequencing of Gamez-Quintanilla's arrest and detention violated the governing regulations. Nevertheless, the appropriate remedy isn't his immediate release. So his petition must be denied.

## DISCUSSION

The Court begins with the governing statute: 8 U.S.C. § 1226(a). That statute says that on the issuance of a warrant "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." It's not disputed that the Government had a warrant prior to arresting Gamez-Quintanilla, so there's no violation of the statute.

The Court turns to the regulations underlying Section 1226(a): 8 C.F.R. §§ 236.1(b)(1) and 1236.1(b)(1). These regulations provide that "[a]t the time of issuance of the [NTA], or at any time thereafter . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. §§ 236.1(b)(1) and 1236.1(b)(1). Gamez-Quintanilla takes the position that these regulations require that an NTA first issue, followed by a warrant, before an individual can be arrested. Dkt. 15-1 at 4. The Government disagrees. It focuses on the words "arrested and taken into custody." Dkt. 11 at 22. Under the Government's proffered reading, so long as an NTA is issued while the detention "process is still underway," the regulations are satisfied. *Id.* Because the NTA here was issued "during the ensuing processing" of Gamez-Quintanilla—even if after he was arrested and initially taken into custody—there was no violation. *Id.*

Gamez-Quintanilla has the better of the argument. The regulations are clear that it is only "at the time of issuance of" an NTA that a person may be "arrested and taken into custody." 8 C.F.R. §§ 236.1(b)(1) and 1236.1(b)(1). Even if the Court were to spot the Government that the phrase "arrested and taken into custody" refers to the "broader custodial process," that doesn't help it here, given that that process may only commence "[a]t the time of issuance of the [NTA]." Here the custodial process didn't begin "[a]t the time of issuance" of the NTA; it was already well underway. *See* Dkt. 10 ¶ 15 ("On July 1, 2026, *during processing* at 26 Federal Plaza, I issued a Notice to Appear (Form I-862) for Petitioner, which was personally served on him at 26 Federal Plaza that day." (emphasis added)). So the regulations were plainly violated.

Having determined that there was a violation, the Court must determine the appropriate remedy. As this Court has previously held, release is not the appropriate remedy whenever a violation is found on a petition for habeas corpus relief. *A.P.A. v. Arteta*, 2026 WL 1587452, at *3 (S.D.N.Y. June 3, 2026). Instead, "unconditional release is generally granted only where the detention is substantively (not merely procedurally) improper, or where a procedural violation is 'so egregious, its consequences so grave, and the unlawful restraints already imposed on the petitioner's liberty so lengthy or severe that law and justice mandate unconditional discharge.'" *Id*. (quoting James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 33.2).

In this context, where the alleged violation concerns the sequencing of the issuance of administrative documents by agency personnel, it's unclear why release would be appropriate. After all, even if the Court were to order Gamez-Quintanilla's release, the Government could just go through the steps to re-arrest him, with the NTA already having been issued this time around. "Law and justice" can't possibly "require" unconditional release in these circumstances. 28 U.S.C. § 2243; *see also Loja Loja v. Acting Field Office Director*, 2026 WL 2321934, at *3–5 (S.D.N.Y. Aug. 10, 2026) (reaching the same conclusion through the lens of lack of prejudice).

Gamez-Quintanilla fails to address the issue of remedy except in a footnote. Dkt. 15-1 at 7 n.3. He says only that release is warranted because "the defect in process Petitioner challenges implicates whether the government's authority to detain him under 8 U.S.C. § 1226(a) was ever triggered in the first place." *Id.* That's not exactly right. The Government certainly had the authority to arrest Gamez-Quintanilla under 8 U.S.C. § 1226(a)—recall it had a warrant. The issue is the timing of Gamez-Quintanilla's arrest under its own regulations. As the Court observed in *A.P.A.*,

over a hundred years ago, the Supreme Court addressed a similar question of remedy. *See United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149 (1923). Justice Brandeis, writing for a unanimous Court, observed that defects in an original warrant for arrest do not necessarily render the ensuing detention and proceedings void; instead, "if sufficient ground for his detention by the government is shown, he is not to be discharged." *Id.* at 158. While that statement may not apply in all cases, it certainly applies to the facts and circumstances presented here.

Because Gamez-Quintanilla does not request any other remedy on the basis of this alleged violation, and because the Court agrees with Judge Koeltl's reasoning in *Loja Loja* addressing the due process and exhaustion issues that have surfaced in this case, *see* 2026 WL 2321934, at * 6–7, the petition is denied.[1] Of course, Gamez-Quintanilla may challenge his continuing detention by seeking release before an immigration judge, and if he believes that that proceeding is conducted in violation of the law, he may certainly return to this Court and seek further relief.

**CONCLUSION**

The petition for habeas corpus relief is DENIED.

The Clerk of Court is respectfully requested to enter judgment for respondents and to close this case.

SO ORDERED.

Dated: August 26, 2026
New York, New York



ARUN SUBRAMANIAN
United States District Judge

[1] The petition's prayer for relief seeks remedies in the alternative to release. Dkt. 1 at 25–26. These requests relate to Gamez-Quintanilla seeking an "individualized bond hearing," but it is uncontested that he has yet to seek such a hearing before the agency in the first place. Gamez-Quintanilla fails to explain how these other proposed remedies relate to the single issue he ultimately focuses on—his arrest's procedural infirmities.